UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN H., <br>         Plaintiff, <br>    v. <br> KILOLO KIJAKAZI, <br>         Defendant. | Case No. 21-cv-09572-DMR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 15, 21-1 |

Plaintiff Evelyn H. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 15.] The Commissioner cross-moves to affirm. [Docket No. 21-1.] For the reasons stated below, the court grants in part Plaintiff's motion, denies the Commissioner's motion, and remands this matter for further proceedings.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on January 18, 2017, alleging disability beginning March 1, 2011. Administrative Record ("A.R.") 375-76. She later amended the onset date to November 29, 2012 and took the position that her period of disability ended December 5, 2017. A.R. 89-90. The application was initially denied on April 12, 2017 and again on reconsideration on July 27, 2017. A.R. 140, 151. An Administrative Law Judge ("ALJ") held a hearing on August 30, 2019 and issued an unfavorable decision on October 1, 2019. A.R. 84-129, 152-71. On October 9, 2020, the Appeals Council remanded the case to the ALJ for further proceedings. A.R. 172-77.

On remand, the ALJ held a second hearing on March 4, 2021. A.R. 36-83. He issued a second unfavorable decision on March 30, 2021. A.R. 12-35. The ALJ determined that Plaintiff

has spondyloarthropathy, which is a severe impairment. A.R. 18. The ALJ found that from November 29, 2012 through June 30, 2015, Plaintiff's date last insured, Plaintiff retained the following residual functional capacity ("RFC"):

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) except: she can lift 10 pounds 50% of an eight-hour workday; lift 15 pounds 15% of an eight-hour workday; never lift overhead; occasionally carry 10 pounds; sit seven hours in an eight-hour workday; and stand and walk four hours in an eight-hour workday. She can occasionally reach overhead; frequently reach otherwise; frequently push and pull 10 pounds; and occasionally operate foot controls. She can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; and never crawl. She cannot work with exposure to unprotected heights, extreme temperatures, or vibration. She can work with occasional exposure to moving mechanical parts, humidity, and wetness. She can occasionally operate a motor vehicle.

A.R. 20-21.

Relying on the opinion of a vocational expert ("V.E."), the ALJ concluded that Plaintiff was capable of performing past relevant work as a public relations representative, and that the work "did not require the performance of work-related activities precluded by" Plaintiff's RFC. A.R. 28-29. Accordingly, the ALJ concluded that Plaintiff was not disabled from November 29, 2012 through June 30, 2015. A.R. 29.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.  ISSUES FOR REVIEW

Plaintiff raises five issues in her challenge to the ALJ's decision:

1. Whether the ALJ erred in finding that Plaintiff's major depressive disorder and anxiety are not medically determinable impairments;

2. Whether the ALJ erred in finding Plaintiff not credible;

3. Whether the ALJ erred in discounting the medical opinion of Maria Arieta, Psy.D.

4. Whether the ALJ erred in determining that Plaintiff's prior employment in marketing constituted past relevant work; and

5. Whether the ALJ failed to resolve an inconsistency between the VE's testimony and

1       the Dictionary of Occupational Titles.

2   Pl.'s Mot. 1-2.

3   **III.     STANDARD OF REVIEW**

4       Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

    If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**IV.     DISCUSSION**

   **A.     The ALJ's Finding that Plaintiff Has No Medically Determinable Mental Impairments**

   Plaintiff argues that the ALJ erred in finding that her major depressive disorder and anxiety were not medically determinable impairments. Pl.'s Mot. 8-11.

   **1. Legal Standard**

   At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe medically determinable physical or mental

3

impairments that significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). To constitute a medically determinable impairment, the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; *see Price v. Kijakazi*, No. 21-35377, 2022 WL 1153930, at *1 (9th Cir. Apr. 19, 2022); *Edlund*, 253 F.3d at 1156. The agency will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. The plaintiff bears the burden to proffer medical opinion evidence to show a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).

### 2. Discussion

In determining Plaintiff's severe impairments, the ALJ discussed major depressive disorder and anxiety. He noted that Plaintiff had "reported anxiety, depression, irritability, and lack of energy in July 2013" and again reported anxiety and depression in November 2014, both reports occurring during the relevant period.[1] A.R. 19 (citing A.R. 618 and 1053). He further noted that "[t]reatment notes indicate [Plaintiff] was prescribed Zoloft for postpartum depression, and was doing well on the medication." *Id*. (citing A.R. 615 and 749). However, the ALJ wrote that "there were no mental status examinations during the period at issue," and "no diagnoses that result from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. Accordingly, he concluded, since "[t]here is no mental status examination in the record . . . there can be no medically determinable mental impairment." *Id*.

---

[1] The relevant period at issue is November 29, 2012, the onset date, through June 30, 2015, Plaintiff's date last insured.

4

The court concludes that the ALJ's determination that Plaintiff has no medically determinable mental impairments is not supported by substantial evidence. Plaintiff gave birth for the first time in July 2011. On November 28, 2012, Margit Tagliaferri, M.D. noted the following with respect to Plaintiff's mental condition:

> Had baby in 7/2011—was in denial of [postpartum] depression for a while . . . [v]ery unstable with moods—short-tempered & angry, crying & emotional. Has never been this way before. Hard time getting out of bed in the morning. If she sits down she falls asleep. Feels detached from anything, doesn't recognize herself in mirror, nothing makes her happy. Son makes her happy but husband/family doesn't have any effect on her. No sex drive. No suicidal ideation but occ feels like family would be better off with her.

A.R. 748. Upon examination, Dr. Tagliaferri found Plaintiff had "[n]ormal judgment, insight, depressed mood, tearful affect." A.R. 749. She diagnosed Plaintiff with "Postpartum depression (648.44)" and prescribed Zoloft, an antidepressant. *Id.*[2]

Plaintiff gave birth to a second child on August 20, 2013. Treatment records prior to the birth contain numerous references to Plaintiff's depression. On July 15, 2013, a provider noted that Plaintiff had depression "[c]aused by: postpartum blues" with various symptoms, including anxiety attacks, anxious episodes, change in appetite, mood changes, and loss of interest in past pleasures or habits. The provider noted that Plaintiff's depression interfered with her family, home, and spouse. A.R. 619. The treatment notes also include notations about medication and therapy: "she had [postpartum] depression and eventually (at 18 months pp) agreed to Zoloft. She then went off Zoloft but restarted it 4 wks ago to stabilize her mood- she was crying frequently. Currently she is on 75 mg and sees a therapist whom she is happy with." A.R. 621.

In notes from a July 30, 2013 visit that the ALJ cited in his discussion, Kirsten Voss, M.D. observed that Plaintiff "states she is doing well overall on her Zoloft although she has a bit of a flat affect during her visit today." A.R. 615. Plaintiff was given a refill of Zoloft at an August 8,

---

[2] The record contains prior references to depression. Plaintiff reported depression in May 2012, A.R. 785, and on October 1, 2012, a provider diagnosed Plaintiff with depression, noting that her judgment, insight, orientation, and memory were "normal" but that she had a flat affect. A.R. 783. This diagnosis appears to have been made by Elson Haas, M.D. although the signature is difficult to discern. *See* A.R. 961, 970 (containing similar signatures by Dr. Haas).

5

2013 appointment. A.R. 613; *see also* A.R. 645 (Aug. 13, 2013 note that Plaintiff's "medical history is significant for postpartum depression and anxiety").

Notes from an August 24, 2013 visit following the birth contain the following comment by a nurse about Plaintiff: "appears to have flat affect. ?depression. Smiled only once during entire visit." A.R. 640. During a visit on October 7, 2013, seven weeks after the birth, Plaintiff completed an Edinburgh Postnatal Depression Scale ("EPDS") questionnaire about how she was feeling and scored 16 on the ten questions. A.R. 636. Alexis Cardellini, M.D., noted Plaintiff's EPDS score and wrote that Plaintiff occasionally had crying spells and acknowledged having depression, although she denied suicidal ideation. A.R. 597. Dr. Cardellini wrote the following about Plaintiff's mental condition:

> [H]er EPDS today is 16, denies SI/HI, and she has already increased her Zoloft dose to 100 mg daily as of 4-5 weeks ago. . . . Discussed increasing her dose to 150 mg which she would like to do. May also go back to see her therapist, but it is not covered by insurance, so she may just start with increasing her meds first. . . . Call if depression symptoms not controlled in 4 weeks, or if symptoms worsen.

A.R. 598. The record reflects that Plaintiff switched from taking Zoloft to Wellbutrin and Effexor, both antidepressants, in June 2014. A.R. 1042.

Additionally, the record contains a Mental Disorder Questionnaire Form completed on March 17, 2017 by Maria T. Arieta, Psy.D. A.R. 888-92. Dr. Arieta wrote that Plaintiff began weekly therapy with Dr. Arieta on July 9, 2015 and continued until October 25, 2016. A.R. 888, 892. She diagnosed Plaintiff with major depressive disorder, recurrent episode, unspecified. A.R. 892. Although Dr. Arieta's assessment is from outside the relevant period and reflects treatment that started ten days after Plaintiff's date last insured, it provides support for the existence of Plaintiff's depression. *See Baker v. Colvin*, No. 16-CV-00771-EMC, 2016 WL 5869944, at *4 (N.D. Cal. Oct. 7, 2016) ("Under well-established case law, evidence dated *after* an ALJ's decision can still be related to the period *before* the ALJ's decision," collecting cases (emphasis in original)).

In sum, the court concludes that the record contains sufficient evidence supporting the establishment of depression as a medically determinable impairment, including a mental

6

examination during the relevant period, diagnoses of depression and postpartum depression, prescription of multiple anti-depressants, and an assessment by a treating psychologist who began treating Plaintiff almost immediately after Plaintiff's date last insured. The ALJ addressed little of this evidence in his opinion, observing that Plaintiff "was prescribed Zoloft for postpartum depression and was doing well on it," but the July 30, 2013 treatment note he cited in support precedes the August 20, 2013 birth of Plaintiff's child and the October 2013 treatment notes documenting Plaintiff's diagnosis of postpartum depression. *See* A.R. 19 (citing A.R. 615).

The Commissioner dismisses the foregoing evidence as "a handful of notes from the more than 1300 page record" but does not address Dr. Tagliaferri's November 2012 diagnosis of postpartum depression or the other references to diagnoses of depression and prescriptions for anti-depressants. Opp'n 8. The Commissioner also argues that even if the ALJ erred in finding no medically determinable mental impairments, the error was harmless. According to the Commissioner, Plaintiff does not identify any evidence predating the date last insured that establishes that she had any work-related limitations from her alleged mental impairments. *Id*.

An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quotation marks and citation omitted). Here, the ALJ's error in concluding that Plaintiff had no medically determinable mental impairments could have affected the analysis at steps two through five. The Social Security Administration has supplemented the five-step sequential disability evaluation process with special regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. At step two, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments. 20 C.F.R. § 404.1520. When evaluating mental impairments at step two, the ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether they have a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). The ALJ must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings." *Id.* If the ALJ finds a medically determinable mental impairment, the ALJ then must assess the degree of functional limitations resulting from

the claimant's mental impairment with respect to four functional areas: the claimant's ability to 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(2), (c)(3). Rating the degree of functional limitations "is a complex and highly individualized process" that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with their "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(1), (c)(2).

At step three, the ALJ considers the medical severity of the claimant's impairments. In determining a claimant's RFC at step four of the sequential analysis, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r. of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The assessment of the claimant's RFC impacts the fifth and last step. In this case, the ALJ considered the assessment of Plaintiff's RFC and age, education, and work experience to see if she was able to perform past relevant work or make an adjustment to other work. If not, a finding of disability would have been warranted. Therefore, given the potential impact of a finding at step two that Plaintiff has a medically determinable mental impairment on each of the subsequent steps, it is not clear whether the ALJ's error was "inconsequential to the ultimate nondisability determination." Thus, the court cannot say that the ALJ's error was harmless. Moreover, this error may have impacted the ALJ's assessment of Dr. Arieta's opinion since she opined on Plaintiff's degree of social functioning, which could impact the ALJ's determination of Plaintiff's ability to "interact with others" pursuant to 20 C.F.R. § 404.1520a(c). It also may have impacted the ALJ's reliance on the VE's testimony and determination that Plaintiff could perform past relevant work (issues three, four, and five).

### B.     The ALJ's Credibility Determination

Plaintiff also argues that the ALJ erred in assessing her credibility. Pl.'s Mot. 2-8.

### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez*

9

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 23.

The ALJ provided two general reasons for discounting Plaintiff's testimony: 1) that her "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because the evidence does not support that degree of limitation," discussing activities Plaintiff testified she could perform, A.R. 23, 27-28; and 2) that "[t]he objective medical evidence does not generally support" Plaintiff's allegations. A.R. 23.

As to the first reason, the ALJ noted that Plaintiff stated that "she could prepare simple meals, care for her children, and do light household chores, such as laundry and wiping surfaces. She remained able to drive a car and go out alone. She shopped in stores and online. She stated she could pay bills, count change, and manage bank accounts." A.R. 23 (citing Ex. 6E, A.R. 474-81). He also noted that Plaintiff "had young children during the relevant time" and testified that "she was able to breast feed, change diapers, and bathe her children," as well as "take her children to the store and lift them in and out of car seats and carts." A.R. 27-28. This is not a "specific, clear and convincing" reason for rejecting Plaintiff's testimony. *See Vasquez*, 572 F.3d at 591. The Ninth Circuit has instructed that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). However, "the ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quotation omitted). The ALJ did not make any such findings in his opinion.

Here, the ALJ cherry-picked examples of Plaintiff's ability to perform certain tasks from the record while ignoring other evidence that was inconsistent with his findings. For example, Plaintiff noted in Exhibit 6E, the Function Report—Adult, that her husband "is the primary caretaker of the children's daily needs" and that she also receives support from other relatives who helped her with the children and house. A.R. 475. She also stated that she is able to "fold laundry, file papers, wipe surfaces" on "good days," and that "[o]n bad days [she] can't do anything," and that she has three bad days per week. A.R. 475, 476. According to Plaintiff, on bad days she is "bed-ridden completely and asleep by 4:00pm." A.R. 475. These statements were consistent with Plaintiff's testimony that she was "largely bedbound" after giving birth in August 2013 and that her brother came to live with her family in October 2013. According to Plaintiff, her brother cooked and cleaned and "followed [her] everywhere" to help her carry the children. A.R. 101. As to the ALJ's observation that Plaintiff "was able to breast feed, change diapers, and bathe her children" and "take her children to the store and lift them in and out of car seats and carts," the ALJ cited two records in support. *See* A.R. 28 (citing A.R. 597, 900). The first was an October 7, 2013 treatment note that noted only that Plaintiff was breastfeeding her newborn. A.R. 597. The second was an undated note by an acupuncturist who treated Plaintiff in 2014 that "yesterday [Plaintiff] was able to venture out to store with kids and successfully lifted them in/out of car and carts, was a little sore today but ok." A.R. 900. This isolated record does not make clear that the occurrence of lifting the children in and out of cars and carts was something Plaintiff could regularly do as opposed to something that was unusual.

The second reason the ALJ gave for discounting Plaintiff's credibility was that "the objective medical evidence does not generally support [Plaintiff's] allegations," A.R. 23, followed by a discussion of the medical evidence. However, the ALJ did not connect any specific testimony by Plaintiff to the evidence or identify which testimony by Plaintiff he found not credible and why. This is insufficient, because an ALJ may not "reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain" and must "specifically make findings" supporting the conclusion that a claimant's allegations of severity are not credible. *Bunnell*, 947 F.2d at 345.

The court concludes that the ALJ erred in assessing Plaintiff's credibility.

### C. Other Issues

As noted above, the ALJ's error with respect to the finding that Plaintiff has no medically determinable mental impairments may have impacted the ALJ's assessment of the medical opinion evidence, reliance on the VE's testimony, and determination that Plaintiff could perform past relevant work. The ALJ's assessment of Plaintiff's credibility may also have affected these determinations. Accordingly, the court does not reach Plaintiff's remaining challenges to the ALJ's opinion and remands the case for further proceedings consistent with this opinion.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part, as the court did not reach all of the arguments in her motion. Defendant's motion for summary judgment is denied. This matter is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 22, 2023

Donna M. Ryu
Chief Magistrate Judge

